UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
LAUREN SHPIGLER AND DAVID
SHPIGLER,

                Plaintiffs,

       - against -

THE HON. ARNOLD P. ETELSON,
CATHY McGRATH, MICHAEL A. KLEIN,
ESQ., CHERI ANDERMAN, TODD
ANDERMAN, and THE TOWN OF
RAMAPO

                Defendants.
------------------------------------------------------x

05 Civ. 6206 (CLB)

***Memorandum and Order***

Brieant, J.

      Before this Court in this Civil Rights case under §1983 of Title 42 of the United States Code ("Section 1983") are motions filed on September 9, 2005, heard and fully submitted on October 28, 2005, to dismiss under Rule 12(b) of the Fed. R. Civ. P. and, in the alternative, motions for summary judgment under Fed. R. Civ. P. 56. Plaintiffs filed opposition papers on September 27, 2005. Reply papers were filed by Defendants Etelson, McGrath, Klein and the Town of Ramapo on October 7, 2005; reply papers were filed by Defendants Cheri and Todd Anderman on October 11, 2005.

      Plaintiffs Lauren and David Shpigler are husband and wife and reside in Montebello, NY with their four children. They are the owners of three dogs, including a Labrador Retriever named Sandy. On June 13, 2003 Sandy bit Defendant Cheri Anderman, the Shpigler's neighbor (they live on the same street), on the hip and thigh area while Mrs. Anderman was a guest in the

1

Shpigler's home. Plaintiffs claim that Cheri Anderman entered a room where Plaintiffs' children were playing and Sandy was present, startled Sandy, and triggered the bite. As a result, Cheri Anderman filed a Dangerous Dog complaint pursuant to § 121 of the New York Agriculture and Markets Law on October 27, 2003. On January 26, 2004 Plaintiffs entered an admission to this Complaint and agreed to specified terms of future confinement for Sandy. This agreement was reduced to a written Order dated November 10, 2004. Included in this Order was the stipulation that there be "Dangerous Dog" signs posted at all entrances to the premises.

On February 24, 2005 Defendant Cathy McGrath, the Dog Control Officer for the Town of Ramapo, responded to Plaintiffs' residence for a Dog at Large complaint. When Ms. McGrath arrived there, she observed that there were no signs posted indicating that there was a "Dangerous Dog" on the premises. Ms. McGrath filed a charge of Criminal Contempt in the Second Degree against Mr. Shpigler based upon her observations that day.

On February 11, 2004, Sandy allegedly attacked another dog while Jan Panasuk walked that other dog. This attack was reported and Ms. McGrath filed a Dangerous Dog Complaint pursuant to the Agriculture and Markets Law. As a result of these numerous events, on February 28, 2005, pursuant to the Dangerous Dog Complaint and §121 of the New York Agriculture and Markets Law, Defendant Hon. Arnold P. Etelson, a Town Justice, signed a Notice of Hearing and Seizure Order with respect to Sandy. When Ms. McGrath arrived at the Shpigler residence to serve Plaintiffs with Justice Etelson's Seizure Order, Ms. McGrath observed Sandy inside the Shpigler home. Ms. McGrath contends that Mrs. Shpigler refused to turn Sandy over and

insisted that Sandy was not home. Based upon this refusal, Mrs. Shpigler was charged with Criminal Contempt in the Second Degree and Obstructing Governmental Administration in the Second Degree. Mrs. Shpigler contends that Sandy was getting his nails clipped elsewhere. Mrs. Shpigler also contends that police and Ms. McGrath entered her home and stayed for a brief period of time; had Sandy been there, Mrs. Shpigler contends, they surely would have known.

On March 1, 2005 a search warrant for the Shpigler home was signed by the Town of Ramapo Justice Rhoda Schoenberger. This search warrant was never executed at the home. Mrs. Shpigler appeared in Court on March 3, 2005, pursuant to the Dangerous Dog Notice of Hearing. Mrs. Shpigler again refused to turn over Sandy, fearful that the dog might be destroyed. Mrs. Shpigler was arraigned on the contempt charge, remanded to the Rockland County Jail, and released from the County Jail the following day by a Judge of the Rockland County Court. Again, on March 17, 2005, Mrs. Shpigler appeared before the Justice Court in Ramapo, and Justice Etelson ordered her to turn Sandy over by Noon the following day. She did not, and was charged with Criminal Contempt in the Second Degree based upon her refusal to turn Sandy over to the Dog Control Officer.

On April 13, 2005, Ms. McGrath was notified that the Shpigler's other dog Onyx was running loose, contrary to a local ordinance. She and the police responded to Plaintiffs' home and observed Onyx running loose. Mrs. Shpigler believed that Cheri Anderman contacted the Town about the Dog at Large. Cheri Anderman contends that Mrs. Shpigler assaulted her by punching her in the face and body, in retaliation. As a result, Mrs. Shpigler was arrested and

charged with Assault in the Third Degree, Harassment in the Second Degree, and Disorderly Conduct.

On April 26, 2005 Ms. McGrath saw Mrs. Shpigler driving her vehicle, and claims that Sandy was inside the vehicle.[1]  Ms. McGrath notified the Ramapo Police.  The Police stopped the Shpigler vehicle.  Mrs. Shpigler refused to turn Sandy over at that time, opened the car door, and told Sandy to run.  Sandy returned to the car on his own.  Mrs. Shpigler states that Sandy was shaking and confused from the police lights and commotion, and cowered in the back seat of the vehicle after returning.  At this point, he was secured by Ms. McGrath over Mrs. Shpigler's objection.  Mrs. Shpigler was arrested and charged with Obstructing Governmental Administration, Resisting Arrest, and Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree.  She claims that several officers grabbed her and threw her to the ground, and then arrested and handcuffed her.  Mrs. Shpigler contends that her arrest was videotaped by the camera in the police car, however she offers no evidence to support her contention that she was mishandled, or, if so, by whom.

Sandy was taken by Ms. McGrath to Pomona Park Kennels.  It was later learned that Pomona Park Kennels was burglarized and only Sandy was stolen.  Plaintiffs express sadness in their complaint over the loss of their family pet, Sandy.  They contend that Sandy only bit people when the dog was on the Shpiglers' property in order to protect the family.

---

[1] Mrs. Shpigler's vehicle has blacked out windows and she does not believe that Ms. McGrath could have seen the dog inside the vehicle.

*State Court Claims*:

On April 6, 2005, after Plaintiffs filed an action in the Rockland County Supreme Court which issued a temporary restraining order, staying the criminal proceedings but not the dangerous dog proceedings. Plaintiffs appealed to have the dangerous dog proceeding stayed, and the Appellate Division, Second Department, granted this appeal and issued a stay of the dangerous dog hearing. The State action for the permanent injunction was denied on September 14, 2005, and all other temporary relief was vacated by State Supreme Court as well.

In this federal action, Plaintiffs seek money damages and injunctive relief to dismiss the Justice Court Proceeding.

*Motion to Dismiss Standard*

In considering a motion to dismiss under Rule 12(b)(6), the Court is obliged to accept the well-pleaded assertions of fact in the complaint as true and to draw all reasonable inferences and resolve doubts in favor of the non-moving party. *See Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir. 1995). The focus of the Court's inquiry is not whether plaintiffs will ultimately prevail, but whether the claimants are entitled to an opportunity to offer evidence in support of their claims. Therefore, a motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

*Summary Judgment Standard*

Fed. R. Civ. P. 56(c) provides that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." If "reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 106 S. Ct. 1505, 2513 (1986). In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson* at 255 (1986). If, as to the issue "on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d. Cir. 1994). Mindful of these standards, the Court now turns to the issues of this case.

The Hon. Arnold P. Etelson moves for dismissal under 12(b), contending that as a judge, he is entitled to absolute judicial immunity. This Court agrees and grants his motion to dismiss the claims as to him. Judicial immunity has been created both by statute and by judicial decision "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554, 18 L. Ed. 2d 288, 87 S. Ct. 1213 (1967) (citation and internal quotation marks omitted); *see also Stump v. Sparkman*, 435 U.S. 349, 355, 55 L. Ed. 2d 331, 98 S. Ct. 1099 (1978) ("As early as 1872, the [Supreme] Court recognized that it was a general principle of the

highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, should be free to act upon his own convictions, without apprehension of personal consequences to himself" (citation, internal quotation marks, and alterations omitted)). "Imposing . . . a burden [of exposure to liability] on judges would contribute not to principled and fearless decision-making but to intimidation." *Pierson*, 386 U.S. at 554. The doctrine of judicial immunity provides for immunity from suit in all but two circumstances. The first is where acts complained of are non-judicial in nature. The second is when the judge acts in the complete absence of jurisdiction. *See Mireles v. Waco*, 502 U.S. 9 (1991).

Plaintiffs contend that the Justice Etelson lacked jurisdiction and therefore is unprotected by the doctrine of judicial immunity. This Court disagrees. Justice Etelson acted completely within the jurisdiction of his Court. On February 28, 2005 Justice Etelson was presented with documents relating to a complaint of a "Dangerous Dog" pursuant to the New York Agriculture and Markets Law, a law over which the Justice Court is empowered to preside. After considering the papers, Justice Etelson signed a Seizure Order and Notice of Hearing. Plaintiffs state that because the papers remained in the Justice Etelson's possession (or were temporarily lost by the Justice) and were not filed with the Clerk prior to the Justice ruling over the matter, jurisdiction was never secured. Therefore, Plaintiffs contend, the Justice in not protected via judicial immunity. The Uniform Justice Court Act ("UJCA") and case law from this Circuit provide otherwise. Jurisdiction includes the right to be wrong.

Under the UJCA §107, "Each justice shall keep or cause to be kept legible and suitable

books, papers, records and dockets of all civil actions and proceedings and all criminal actions and proceedings." Plaintiffs interpret this to mean that until the Clerk of the Justice Court has filed the documents relating to the case, jurisdiction has not been acquired by the Court. This narrow approach is strained and unjustified. "The scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Although the Clerk usually files the relevant documents before the Court acts, the failure to adhere to that sequence of events in this instance does not prevent the Court from acquiring jurisdiction. In *Bradley v. Fisher*, 80 U.S. 335 (1871), one of the earliest cases discussing the doctrine of judicial immunity, the United State Supreme Court held that a judge was protected by the judicial immunity when he declared an attorney to be in contempt, and summarily disbarred him, even when the judge had no authority to do so in that manner, and the attorney was subsequently reinstated. In that case, the Supreme Court noted the distinction between a judge acting in excess of his authority and a judge acting in complete absence of his authority; in the first case judicial immunity attaches, in the second case it does not:

> Judges are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. *See Bradley* at 351; *see also Tucker v. Outwater*, 118 F.3d 930 (2d. Cir. 1997).

Therefore, even assuming the paperwork should have been filed by the Clerk first and not handed to the Justice by the person seeking relief from the Court, the Judge would be entitled to judicial

immunity.

This Court rejects Plaintiffs' contention that Justice Etelson was acting as a prosecutor when he filed a charge of criminal contempt against Mrs. Shpigler. Justice Etelson reasonably believed that Mrs. Shpigler violated an order of the Justice Court. Judges routinely file contempt papers when parties disregard their orders. However, contrary to fact, if Justice Etelson acted as a prosecutor, he would also be protected from this suit by reason of absolute prosecutorial immunity: "The nature of absolute immunity is such that it accords protection from any judicial scrutiny of the motive for and reasonableness of official action. *Robison v. Via*, 821 F.2d 913, 918 (2d, Cir. 1987). In the realm of absolute immunity, evaluation of motive and reasonableness is forbidden. *Id.* at 920. These principles are not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy. *See Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d. Cir 2004). Therefore, the claims against Justice Etelson are dismissed.

The claims against Town of Ramapo Canine Control Officer Cathy McGrath are dismissed under the doctrine of qualified immunity. Public officials are shielded from civil liability "if their actions were objectively reasonable, as evaluated in the context of legal rules that were 'clearly established' at the time." *Poe v. Leonard*, 282 F.3d 123, 123 (2d Cir. 2002)

9

(citation omitted). Our Court of Appeals stated:

> [I]f Plaintiff['s] version of the facts reveals that the officials could reasonably have believed they were not violating Plaintiff's constitutional rights, the district court should have granted the motion for summary judgment [for the Defendant] and we will reverse the court's denial of that motion. *See Bizzaro v. Miranda*, 394 F.3d 82, 86 (2d. Cir. 2005).

The Plaintiffs' version of the facts here reveal that Defendant McGrath complied with procedure and reasonably believed she was doing her job appropriately and in furtherance of the New York Agricultural and Markets Law, and not in violation of Plaintiffs' constitutional rights. Ms. McGrath asked Mrs. Shpigler to turn over Sandy pursuant to an Order from Justice Etelson. When Mrs. Shpigler refused and stated that Sandy was not home, Ms. McGrath then signed the petition for a order for Criminal Contempt charge as Mrs. Shpigler was acting in direct violation of Justice Etelson's Order. Though Plaintiffs claim constitutional violations by Ms. McGrath, this Court concludes as a matter of law that there were none. Because Plaintiff's version of the facts establishes that Defendant McGrath could have reasonably believed she was not violating Plaintiffs' constitutional rights, Ms. McGrath is entitled to qualified immunity; the claims against her are therefore dismissed. Immunity means freedom from lawsuits, not just freedom from losing a lawsuit.

Plaintiffs' also assert claims against Defendant Michael A. Klein, Esq., Town Attorney of Ramapo, in that he assisted and arranged for Ms. McGrath to take all of the aforementioned actions, purportedly in violation of Plaintiffs' Constitutional rights. The action against Mr. Klein is dismissed, as the Plaintiffs cannot demonstrate any of the alleged conduct on the part of Mr.

Klein violated their rights or resulted in any damage. As set forth in his unrefuted affidavit, Mr. Klein never communicated with Ms. McGrath regarding her filing of criminal charges against Mrs. Shpigler. He did not assist or arrange for the stop on Route 202 or the subsequent seizure of Sandy. Any actions that might have been taken in this case by the Town Attorney's office were by his subordinates. Under Section 1983 of United States Code (42 U.S.C. 1983), in order to establish a claim, Plaintiffs must show that: 1)a person acting under color of state law committed the conduct complained of and 2)that the conduct deprived the Plaintiffs of some constitutional right. *See Daniels v. Williams.*, 474 U.S. 327 (1981). A supervisor cannot be held responsible under Section 1983 on a *respondeat superior* basis; there must be some showing of personal involvement. The Court finds no personal involvement by Mr. Klein here. Specifically, Plaintiffs fail to allege any evidence of Mr. Klein's 1)direct participation in the alleged violation, 2)failure to remedy a wrong of which the defendant has been informed, 3)gross negligence in the supervision of subordinates, or 4)deliberate indifference to constitutional violations. *See Colon v. Coughlin*, 58 F.3d 865 (2d. Cir. 1995). Plaintiffs only allege that Defendant Klein was "setting and determining policy, custom, and usage of the Defendant Town of Ramapo." Simply stating this doubtful allegation is insufficient. Plaintiffs must put forth to the Court evidence of the nature of the alleged policies, customs. or usages that have any connection to the facts of this case. Plaintiffs have failed to do so. Moreover, Mr. Klein is entitled to absolute immunity because "absolute immunity extends to prosecutors, executive officers, and government attorneys, among others." *Burtz v. Economou*, 438 U.S. 478 (1978). Accordingly, the claims against Mr. Klein are dismissed.

Likewise, the Defendant Town of Ramapo is entitled to a dismissal of the claims against it. Plaintiffs have failed to allege facts "demonstrating the existence of an officially adopted policy or custom of the municipal Defendant that caused Plaintiff injury, and a direct and deliberate causal connection between that policy and custom and the deprivation of a federally protected right." A recitation of acts in order to show that a policy or custom exists and that it infringes upon their rights is insufficient. *See Dwares v. City of New York*, 985 F.2d 94 (2d. Cir. 1993).

Plaintiffs also allege that Anderman, Defendant, conspired with the Town seeking, ultimately, the destruction of Sandy, in violation of their 4th, 5th, 8th, and 14th Amendment Rights. In order to state a claim under § 1983, "a plaintiff must allege that he was injured by either a state actor or a private party acting under color of law." *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d. Cir 2002). This is because "the United States Constitution regulates on the Government, not private parties." *United States v. Int'l Bhd. Of Teamsters, et al.*, 941 F.2d 1292, 1295-6 (2d. Cir. 1991). Therefore, "a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct creates 'state action'" *Id.* "In order to satisfy the state action requirement where the defendant is a private entity, the allegedly unconstitutional conduct must be 'fairly attributable' to the state." *See Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 312 (2d. Cir. 2003). Dismissal under Rule 12(b) is appropriate in this instance. Here, this Court concludes as a matter of law that Defendants' filing of loose dog complaints and providing information to the Town Attorney for the purpose of attaining a dog seizure does not demonstrate a "close nexus between the State and the challenged action that

seemingly private behavior may be treated as that of the State itself."   Sandy bit and injured Mrs. Anderman, and Sandy's owners agreed to both posting "Dangerous Dog"signs and confining Sandy to prevent further injury to others.  While it is likely these Defendants would have been pleased by the seizure of Sandy, the Court cannot say as a matter of law that the requisite "nexus" has been established by the Plaintiffs.  When members of the public complain to law enforcement, they reasonably expect that law enforcement will respond reasonably and in a Constitutional manner.  By calling the cops, a civilian complainant does not thereby become responsible for Constitutional violations which they may commit in response.

As additional grounds for dismissal, the Court notes that there are still pending in State court against Mrs. Shpigler two counts of Criminal Contempt and one Count of Obstructing Governmental Administration in the Second Degree, based upon her failure to comply with Justice Etelson's Seizure Order, Harassment in the Second Degree and Disorderly Conduct based upon the incident with Mrs. Anderman, and counts of Obstructing Governmental Administration in the Second Degree, Resisting Arrest and Aggravated Unlicensed Operator in the Third Degree, based upon letting her dog run free when the police stopped her car to retrieve Sandy.  There is also a Dog At Large complaint pending against Mr. Shpigler; a trial has been conducted on that charge, but no determination has been made yet.  All of this would justify *Juidice* Abstention,

*Juidice, et al., Judges v. Vail, et al.,* 430 U.S. 327 (1977).

### **Conclusion:**

Therefore, for the foregoing reasons, the Court grants Defendants' motions to dismiss.

13

SO ORDERED.

Dated: White Plains, New York
       November 1, 2005

                                                                                          _____
                                                                                           Charles L. Brieant, U.S.D.J.